CAROL A. SHANNON, F.K.A. CAROL A. CULLINANE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shannon v. Commissioner
Docket No. 26836-88
United States Tax Court
T.C. Memo 1991-207; 1991 Tax Ct. Memo LEXIS 231; 61 T.C.M. (CCH) 2591; T.C.M. (RIA) 91207; May 14, 1991, Filed *231 Decision will be entered for the respondent. Gerald C. Baker and Kenneth A. Pels, for the petitioner. Lindsey D. Stellwagon, for the respondent. WELLS, Judge. WELLS
MEMORANDUM OPINION Respondent determined a deficiency in Federal income taxes for taxable year 1981 in the amount of $ 92,790.30 against Eugene J. Cullinane and petitioner. The issue to be decided in the instant case is whether petitioner qualifies for relief as an "innocent spouse" under section 6013(e). [1]
Some of the facts have been stipulated for trial pursuant to Rule 91. The stipulation and accompanying exhibits are incorporated in this Opinion by reference. At the time the petition was filed in the instant case, petitioner resided in Alexandria, Virginia. For taxable year 1981, petitioner and Eugene J. Cullinane (Mr. *232 Cullinane), who was then petitioner's husband, filed a joint return. As stipulated by the parties, the deficiency due in the instant case is $ 55,000 and arises out of unreported corporate distributions from Eugene J. Cullinane, Inc. (the corporation). Mr. Cullinane is the sole owner of the corporation. Petitioner is a high school graduate and completed nearly two years of college. She worked as a government employee for 15 years and also worked in the construction business in Florida. Her job in Florida involved making telephone calls to contractors who were involved in finishing homes. Petitioner met Mr. Cullinane when she applied for a job with him after she left Florida. She married Mr. Cullinane on January 24, 1981, in Arlington, Virginia. Throughout the approximately 20 years that Mr. Cullinane owned his own construction business, a bookkeeper or secretary maintained the books and records of the business and signed the checks. The first bookkeeper for the corporation was Mrs. Isabell Bidgood, who remained with the corporation for approximately eight years. Mrs. Bidgood was succeeded by Theresa Miller, who was the bookkeeper until Mr. Cullinane married petitioner. After *233 Mr. Cullinane and petitioner married, Ms. Miller was dismissed, and thereafter petitioner took over responsibility for the corporation's books and records and was designated as secretary of the corporation in its banking records. Ms. Miller returned to keep the books of the corporation when Mr. Cullinane and petitioner separated in late April, 1982. Petitioner's services to the corporation included writing payroll checks, calling subcontractors regarding bills, and attending to creditor problems. Petitioner also was responsible on a regular basis for writing checks on and making deposits to the corporation's bank accounts. She did not, however, receive a salary for her services to the corporation. Mr. Cullinane did not prepare or sign the corporation's checks during the year in issue. In addition to providing services to the corporation, petitioner wrote support checks to Mr. Cullinane's former spouse out of the corporation's account, or out of a personal bank account, depending on which account had more money. Petitioner also was responsible on a regular basis for writing checks on and making deposits to the household bank account. Prior to petitioner's marriage to Mr. Cullinane, *234 the corporation purchased property known as 6500 Georgetown Pike, McLean, Virginia (the Georgetown Pike property). On July 22, 1981, the corporation sold the Georgetown Pike property. Mr. Cullinane and petitioner signed the deed transferring the Georgetown Pike property for a price of $ 810,000. The net proceeds from the sale of the Georgetown Pike property was $ 469,621.59, which amount was deposited by petitioner in the Burke and Herbert Bank and Trust Co. (the Bank), and invested along with other funds in a certificate of deposit issued by the Bank on August 4, 1981, in the amount of $ 481,970.09 (the Bank certificate of deposit). The Bank certificate of deposit was purchased in the names of Mr. Cullinane and petitioner. On October 5, 1981, the Bank certificate of deposit matured in the amount of $ 495,733.78, which amount included interest of $ 13,763.69. The interest was reported as interest income on the joint Federal income tax return filed by petitioner and Mr. Cullinane for 1981. On October 5, 1981, a portion of the funds received when the Bank certificate of deposit matured was used to pay a loan in petitioner's name in the amount of $ 115,000 and interest on the *235 loan in the amount of $ 2,826.16. On October 5, 1981, the balance of the funds received on maturity of the Bank certificate of deposit, in the amount of $ 377,907.62, together with a check drawn by petitioner on an account of the corporation in the amount of $ 22,092.38, was used to fund a purchase from Home Federal Savings and Loan Association (Home Federal) of two certificates of deposit in the amount of $ 200,000 each (the Home Federal certificates of deposit). One of the Home Federal certificates of deposit was issued in the name of Mr. Cullinane, as trustee for petitioner. The other was issued in the name of petitioner, as trustee for Mr. Cullinane. Petitioner participated in the purchase of the Home Federal certificates of deposit. On April 5, 1982, petitioner transferred $ 50,000 from the Home Federal certificate of deposit in her name as trustee to a savings account in her individual name at Home Federal. Petitioner spent a large portion of the $ 50,000 and returned $ 17,600 to Mr. Cullinane as part of a divorce settlement agreement. On April 7, 1982, petitioner purchased a Volvo automobile using the corporation's funds. Such automobile was retained by petitioner as *236 part of the divorce settlement. Robert Locke, a "tax consultant" and "business advisor," prepared the 1981 tax returns filed by petitioner and Mr. Cullinane. On April 14, 1982, petitioner and Mr. Cullinane, along with Mr. Locke, signed the joint 1981 Federal income tax return. The return reported gross income of approximately $ 49,000, consisting of (1) approximately $ 25,000 in interest income from various bank accounts, (2) approximately $ 23,000 of capital gain from the installment sale of an office building (disposed of for a total selling price of $ 225,000), and (3) a refund of State and local income tax. The taxable income reported on the return was $ 9,150, and the total tax reported due was $ 793. (A notice subsequently was issued by the I.R.S. relating to alternative minimum tax.) OPINION The sole issue in the instant case is whether petitioner qualifies as an innocent spouse under section 6013(e). Petitioner contends in her reply brief that she "did not stipulate to any deficiency on her part, but rather to the deficiencies on the part of Eugene Cullinane and Eugene J. Cullinane, Inc." Yet, the stipulation does not contain any such reservation. Possibly, petitioner *237 fails to recognize her joint and several liability for tax due with respect to a joint return. Sec. 6013(d)(3). Additionally, the stipulation appears to be contrary to petitioner's contention. The stipulation states that "there is due a deficiency in income tax arising from the joint 1981 return in the amount of $ 55,000 from unreported corporate distributions from Eugene J. Cullinane, Inc." and that the "sole remaining issue in this case is whether Carol Ann Shannon, f.k.a. Carol Ann Cullinane qualifies as an innocent spouse." Even if the deficiency were at issue in the instant case, petitioner has failed to prove the lack of such deficiency. Rule 142(a). We therefore only consider the remaining innocent spouse issue, i.e., whether petitioner qualifies as an innocent spouse for relief from joint and several liability for the deficiency. Under section 6013(e)(1), innocent spouse relief is available if the taxpayer proves that: (1) A joint return was made for the year in issue; (2) on such return, a substantial understatement of tax attributable to grossly erroneous items of the other spouse exists; (3) the taxpayer did not know, and had no reason to know, of such substantial *238 understatement when the taxpayer signed the return; and (4) taking into account all facts and circumstances, holding the taxpayer liable for the deficiency attributable to such substantial understatement is inequitable. To qualify as an innocent spouse, petitioner must prove compliance with each of such elements. , affg. ; , affg. in part and revg. in part a Memorandum Opinion of this Court; Rule 142(a). The parties have stipulated that petitioner and Mr. Cullinane filed a joint return for the year in issue. Additionally, respondent concedes that a substantial understatement of tax exists in the instant case. Respondent, however, contends that petitioner has failed to prove the other requirements necessary for innocent spouse relief, namely, that the substantial understatement of tax was attributable to Mr. Cullinane, that petitioner did not know and had no reason to know of the understatement, and that holding petitioner liable for the tax would be inequitable. Because we find, as discussed *239 below, that petitioner has failed to satisfy the requirement as to knowledge, we will not address the other requirements. In considering whether petitioner had reason to know of the understatement, the critical inquiry is whether, at the time of signing the returns, a reasonable person in petitioner's circumstances could have been expected to know of the understatement (or that the reported tax liability was erroneous) or that further investigation was warranted. ; , affg. ; , affg. on this issue and revg. on another issue ; . [2]
*240 When a spouse claiming innocent spouse relief knows the circumstances of a sale that generates income which is omitted from a joint return, that spouse is deemed to know of the omission and does not qualify for relief even if such spouse was unaware of the tax consequences of the sale. ; , affd. . A spouse may not close his or her eyes to unusual or lavish expenditures which might have alerted him or her to unreported income, ; , because section 6013(e) is designed to protect the innocent, not the intentionally ignorant. [3]
*241 The parties have stipulated that the understatement in the instant case arises out of "unreported corporate distributions" from the corporation. Petitioner contends that she did not know of the understatement because "she was not privy to the financial records" of the corporation. Petitioner's claim, however, is not supported by the record in the instant case. To the contrary, we think the record establishes that petitioner in fact was privy to the corporation's financial records. Petitioner acted as secretary of the corporation and was responsible for writing its checks, making its deposits, and dealing with various subcontractors and suppliers. She sought a position with Mr. Cullinane, having applied for a job with him after she left a construction-related job in Florida. She signed the deed of sale for the Georgetown Pike property (which had been owned by the corporation) and took the check representing the sales proceeds from such property to the Bank, where such proceeds were invested in the Bank certificate of deposit issued in her and Mr. Cullinane's joint individual names. A portion of the proceeds received upon maturity of the Bank certificate of deposit (on October *242 5, 1981) was used to pay off a loan in the amount of $ 115,000 in petitioner's name. Petitioner assisted in converting the balance of the proceeds from the Bank certificate of deposit into the Home Federal certificates of deposit that were issued in reciprocal trusts for herself and Mr. Cullinane. Petitioner also used the corporation's account to write support checks to Mr. Cullinane's former spouse when such account had more money than their personal bank account. Such facts demonstrate petitioner's knowledge of the financial affairs of the corporation. She participated in and had actual knowledge of the sale of the Georgetown Pike property and the distribution of the net proceeds of the sale into petitioner's and Mr. Cullinane's personal accounts. Petitioner also used funds of the corporation to pay personal expenses of Mr. Cullinane. While petitioner may have been unaware of the tax consequences of such facts (i.e., that such use of the corporation's funds constituted taxable distributions), we have held that the lack of such knowledge is insufficient to qualify a spouse as an innocent spouse under section 6013(e). Petitioner *243 also contends that she should not be liable for the deficiency because she "was coerced by Mr. Cullinane into signing the joint return." Petitioner contends that such "coercion" shows that she was "completely unaware of what was being reported by her husband in this return." Although petitioner's claim of coercion raises the specter of whether the return for the year in issue was a "joint" return within the meaning of section 6013(e) and (d)(3), petitioner does not assert that the return was not a joint return. [4] Rather, petitioner points to the existence of a joint return only as proof that she meets the first requirement for innocent spouse relief under section 6013(e)(1)(A). In any event, we do not believe that the facts in the instant case would be sufficient to vitiate the return as petitioner's joint return. In order to prove that the return was not a joint return, petitioner would have been required to show that she was unable to resist the demands of Mr. Cullinane and that she would not have signed the returns except for the constraint applied to her will by Mr. Cullinane. ; ; *244 . In the instant case, the only evidence of such coercion came from the testimony of Mr. Locke, who admittedly was hostile to Mr. Cullinane, apparently due to a lawsuit in which both of them were involved. We did not find Mr. Locke a credible witness and note that his testimony differed significantly from petitioner's own testimony regarding the signing of the return. Accordingly, we reject petitioner's argument regarding coercion. Petitioner may not establish her innocence by her mere failure to review the return that she signed, a return into which she had a duty to inquire. ; ; Sanders v. Commissioner, 509 F.2d at 166-168; ; . *245 We also note that petitioner's role vis-a-vis the corporation distinguishes the instant case from , in which we held that a spouse did not know or have reason to know of an understatement, where the spouse knew nothing of the other spouse's business affairs and often had been forced to sign important documents, including tax returns, without being given the opportunity to review them. Based on the foregoing, we hold that petitioner does not qualify as an innocent spouse under section 6013(e). To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. ; .↩
3. ; ; .↩
4. As stipulated by the parties, the sole issue in the instant case is whether petitioner qualifies as an innocent spouse.↩